## Veterans' Preferences

RUTHERFORD, Deputy Attorney General, November 24, 1947.—This department is in receipt of your communication of August 21, 1947, requesting interpreta-

tion to be given the Veterans' Preference Act of May 22, 1945, P. L. 837, as added thereto by the Act of June 25, 1947, P. L. 939, 51 PS §492.1 et seq., under the following circumstances:

1. Do the provisions of this act apply to personnel who were members of the armed forces of the United States during the Spanish-American War and World War I?

2. If the answer to question No. 1 is in the affirmative, between what dates shall military service be considered in connection with the Spanish-American War, World War I, and World War II?

3. Is an employe who is on inactive military status "during any war" a member of the armed forces for such period of inactive status within the meaning of the act?

4. Where an employe is on military leave of absence from the service of the Commonwealth, is he considered as being in the "service of the civil service or on public works" during such period of military leave?

5. If the answer to question No. 4 is in the affirmative, does such an employe receive double credit for such period of military service?

6. Does the term "exclusive law" as used in section 8 make it unnecessary to consider factors other than length of service in determining which employes shall be furloughed in the event of reduction in force?

The amending Act of June 25, 1947, P. L. 939, supra, inserts a right under certain circumstances of retention in the public service, as well as original preference for appointment of the soldier to any public position, or on public works of the Commonwealth.

Section 6.1 of the amending Act of June 25, 1947, provides:

"Whenever a reduction in force is necessary in any public position, or on public works of this Commonwealth and its political subdivisions, and personnel

are discharged according to seniority, the number of years of service of any soldier shall be determined by adding his total years of service in the civil service or on public works to his total years of service as a member of the armed forces of the United States, or in any women's organization officially connected therewith during any war in which the United States engaged."

Generally speaking, it is clear from this section that whenever a reduction in force is necessary, and the reduction is made on the basis of seniority, then the soldier employe is entitled to have added to his or her years of service with the Commonwealth, the number of years in the military service.

Section 1 of the Veterans' Preference Act, supra, 51 PS §492.1, defines "soldier" as:

". . . a person who served in the armed forces of the United States, or in any women's organization officially connected therewith, during any war in which the United States engaged, and who has an honorable discharge from such service."

Section 6.1 above quoted also uses the phrase "any war in which the United States engaged". It is clear, therefore, that the answer to your first question is in the affirmative, and that the provisions of the Veterans' Preference Act, including the 1947 amendment, apply to personnel who were members of the armed forces of the United States during the Spanish-American War and World War I.

For answer to question 2, some consideration should be given to the beginning and termination dates of the Spanish-American War, World War I and World War II.

The power of declaring war is vested in Congress by article I, section 8, clause 11, of the United States Constitution. Though the beginning dates of wars are definite, the termination dates vary depending on

the particular statues involved. For example, see Ex. Ord. 6098, 38 U. S. C. A., chapter 12, page 685, which provided for the following beginning and termination dates.

"The beginning and termination dates of the wars shall be: The World War, April 6, 1917, and November 11, 1918, but as to service in Russia, the ending date shall be April 1, 1920; the Spanish-American War, April 21, 1898, and August 13, 1898; the Philippine Insurrection, August 13, 1898, and July 4, 1902, but as to engagements in the Moro Province, the ending date shall be July 15, 1903; the Boxer Rebellion, June 20, 1900, and May 12, 1901."

This executive order was promulgated by the President March 31, 1933, under specific authority of the Act of Congress of March 20, 1933, c. 3, 4, 48 Stat. at L. 9, 38 U. S. C. §704, which directed the President to prescribe what, for the purpose of Federal pension legislation, would be deemed wartime service.

As to the end of former wars, see Bain et al. v. The Speedwell et al., 2 Dallas 40, 1 L. Ed. 280 (1784) ; Herrera v. United States, 222 U. S. 558, 32 S. Ct. 179, 56 L. Ed. 316 (1908) ; MacLeod v. United States, 229 U. S. 416, 33 S. Ct. 955, 57 L. Ed. 1260 (1913) ; and that World War I did not cease on the day of the armistice: Weisman v. United States, 271 Fed. 944 (1921).

See also In re Miller, 281 Fed. 764, 775, wherein it was stated that the Alien Property Custodian had the right to seize property of enemy aliens after the armistice November 11, 1918, was entered into and before July 2, 1921, when the war was declared at an end by joint resolution of Congress, approved and signed by the President.

See also Zimmerman v. Hicks, 7 F. (2d) 443, that war between the United States and Germany ceased on July 2, 1921, until which time the German nationals

were alien enemies despite earlier resumption of commercial relations.

See also Hijo v. United States, 194 U. S. 315, 323, relative to the Spanish-American War, in which the court said that the state of war did not in law cease until ratification, in April 1899, of the treaty of peace.

Since veterans' legislation should have a liberal interpretation, we conclude that the latter dates should govern and, therefore, the Spanish-American War commenced April 21, 1898, and was terminated April 30, 1899; World War I commenced April 6, 1917, and was terminated July 2, 1921; World War II commenced December 7, 1941, and it has not yet been officially ended. See State Employes' Military Service, 56 D. & C. 535 (1946).

It is the date of enlistment or draft which sets in motion rights under the Veterans' Preference Act, as amended, supra. If the employe enlisted or was drafted during the war period, that is between the above dates, then the entire military service should be considered, that is, the time of employe's military service should be computed to date of discharge. The termination of war has nothing to do with the military service; if the enlistment or draft was during the war period, the soldier's discharge will satisfy the provisions of section 6.1.

We shall consider your questions 3, 4 and 5 together. An employe of the Commonwealth, who is serving on active duty in one of the armed forces of the United States, or in any women's organization officially connected therewith, is on military leave, and is therefore separated from the service of the Commonwealth. It should be noted, however, that under section 1 of the Act of June 7, 1917, P. L. 600, 65 PS §111, such an employe has a preferred status since he cannot be removed while on military leave, and if an appointment is made to the vacancy, such an appointee is but a sub-

stitute. If an employe has inactive military status during any war, since he is inactive, we assume that he is still in the service of the Commonwealth, and would not be on military leave. There would then be no question of his total years of service. As for the soldier who is on military leave, the number of years of service of the soldier would be computed as stated in the act, namely, the total years of service in the civil service or in public works shall be added to his total years of service as a member of the armed forces of the United States, or in any women's organization officially connected. therewith. Since the answer to question 4 is in the negative, it is unnecessary to discuss question 5.

As to question 6, the term "exclusive law" refers to the entire Veterans' Preference Act. The phrase means that the Veterans' Preference Act of May 22, 1945, P. L. 837, as amended by the Act of June 25, 1947, P. L. 939, 51 PS §492.1 et seq., shall be the exclusive law pertaining to veterans' preference of appointment and retention. However, the Veterans' Preference Act must be construed with other pertinent acts, for example, the Pennsylvania Civil Service Act of August 5, 1941, P. L. 752, as amended, 71 PS §§741.1 et seq.; the Parole Act of August 6, 1941, P. L. 861, as amended, 61 PS §§331.1 et seq. Seniority would not necessarily be the only factor considered when a reduction in force is necessary, and furloughs and discharges are made. Section 6.1, which amends the Veterans' Preference Act, supra, merely states that if the furlough or discharge is made according to seniority, then the number of years of service of the soldier shall be determined by adding his total years of service in the civil service or on public works, to his total years of service as a member of the armed forces of the United States, or in any women's organization officially connected therewith, during any war in which the United

States engaged. It is therefore possible to consider factors other than seniority or length of service in determining which employes shall be furloughed or discharged, in the event of reduction in force.

To summarize, it is our opinion, therefore, and you are accordingly advised:

1. That the provisions of the Act of June 25, 1947, P. L. 939, amending the Act of May 22, 1945, P. L. 837, 51 PS §492.1 et seq., apply to personnel who were members of the armed forces of the United States during the Spanish-American War and World War I.

2. That military service should be considered in connection with the Spanish-American War between the dates of April 21, 1898, and April 30, 1899; in connection with World War I, between the dates of April 6, 1917, and July 2, 1921; and, in connection with World War II, between the dates of December 7, 1941, and the termination of the war.

3. If the employe is on military leave from the service of the Commonwealth, he would be within the meaning of the Act of June 25, 1947, supra. Otherwise, the answer is in the negative.

4. That an employe who is on military leave of absence is during that period temporarily separated from the service of the Commonwealth, and therefore cannot be considered as being in "the civil service or on public works", and cannot receive double credit for such period of military service.

5. Since the answer to question 4 is in the negative, it is unnecessary to answer question 5.

6. That the term "exclusive law", as used in section 8 of the Veterans' Preference Act of May 22, 1945, P. L. 837, as amended, 51 PS §492.8, does not limit reduction of force to the one factor of seniority or length of service; therefore, other factors may be considered in determining which employes may be furloughed in the event of reduction in force.